EXHIBIT 1

BROWN MOSKOWITZ & KALLEN, P.C.
75 Main Street, Suite 203
Millburn, New Jersey 07041
(973) 376-0909
Attorneys for Plaintiffs

| | |
|---|---|
| KENNETH M. MEISELMAN, BRIAN ROTHMAN, GREG SILVERSHEIN and LARRY and SHERYL WYMAN, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SOMERSET COUNTY |
| Plaintiffs, | Docket No.: Som-L-2114-10 |
| vs. | Civil Action |
| HAMILTON FARM GOLF CLUB, LLC and HF BUSINESS TRUST, | COMPLAINT AND JURY DEMAND |
| Defendants. | |

Plaintiffs, Kenneth M. Meiselman, Brian Rothman, Greg Silvershein and Larry and Sheryl Wyman (collectively, "Plaintiffs"), by their attorneys, Brown Moskowitz & Kallen, P.C., by way of Complaint against Defendants, Hamilton Farm Golf Club, LLC ("HFGC") and HF Business Trust (collectively, "Defendants"), allege and say as follows:

### THE NATURE OF THIS DISPUTE

1.      This is an action by the former members of a golf club against the owners of the club and its affiliate for breach of contract, for breach of the covenant of good faith and fair dealing and to set aside a mortgage against the club's sole asset on the ground that such mortgage was a fraudulent conveyance.  As is set forth below, Defendant HFGC is holding hostage millions of dollars of member deposits belonging to resigned members of the club, while simultaneously granting its affiliate, Defendant HF Business Trust, a lien against the club's sole asset.

## THE PARTIES

2.     Plaintiff Kenneth M. Meiselman is a citizen of the State of New Jersey residing at 40 Geiger Lane, Warren, New Jersey 07059.

3.     Plaintiff Brian Rothman is a citizen of the State of New Jersey residing at 20 Nottingham Way, Warren, New Jersey 07059.

4.     Plaintiff Greg Silvershein is a citizen of the State of New Jersey residing at 3 Cardinal Drive, Warren, New Jersey 07059.

5.     Plaintiffs Larry and Sheryl Wyman are citizens of the State of Florida residing at 50 South Pointe Drive, Apartment 2703, Miami Beach, Florida 33139.

6.     Upon information and belief, Defendant Hamilton Farm Golf Club, LLC is a Delaware limited liability company with its principal place of business at 1040 Pottersville Road, Gladstone, New Jersey 07934.

7.     Upon information and belief, Defendant Hamilton Farm Golf Club, LLC is doing business in the State of New Jersey as the "Hamilton Farm Golf Club."

8.     Upon information and belief, Defendant HF Business Trust is an unincorporated Maryland business trust having its principal place of business at 11311 McCormick Road, Suite 470, Hunt Valley, Maryland 21031.

## FACTS COMMON TO ALL COUNTS

9.     Defendant Hamilton Farm Golf Club, LLC owns and operates an exclusive private golf club in Somerset County, New Jersey (the "Club").  Membership in the Club is by invitation only.

10.     Plaintiffs are individuals who have resigned their membership in the Club.

2

11.     At the time that each of the Plaintiffs originally joined the club, there were two categories of Club membership: "Individual Golf Membership" and "Family Gold Membership."

12.     As was set forth by the Defendants in the "Frequently Asked Questions" brochure distributed to prospective members of the Club at the time Plaintiffs joined the Club (the "FAQ") and in the "Hamilton Farm Golf Club Membership Plan" that was then in effect (the "Membership Plan"), true and correct copies of which are attached hereto as **Exhibits A and B**, respectively, Individual Golf Members were induced to join on the basis, in part, of the promise of their entitlement "to use all of the golf and social facilities of the Club in accordance with the Club's Rules and Regulations." Family members of Individual Golf Members were entitled to use the Club's facilities, but only when the Individual Golf Member was present, and upon the payment of "full guest fees." [FAQ at pp. 1-2; Membership Plan at 2-3].

13.     As was set forth in the FAQ and in the Membership Plan, the spouses of "Family Golf Members" were entitled to use the Club's facilities without payment of guest fees and whether or not the Family Golf Member was present. Unmarried children of Family Golf Members under the age of 23 and living with the Family Golf Member were entitled to use the Club's facilities without payment of guest fees, but only when the Family Golf Member and his or her spouse was present. [FAQ at 2-3; Membership Plan at 3].

14.     At the time the Plaintiffs joined the Club, the FAQ provided to prospective members and the Membership Plan indicated that the total number of "Individual Golf Members" and "Family Golf Members" would be strictly limited to 350 members. See FAQ at 2 (stating that "the combined number of Individual and Family Golf Memberships that can be issued in the Club is limited to 350").

3

15.     These documents also disclosed Defendants' intention to offer a limited number of "Cottage Memberships" in the future.  See FAQ at 1 (stating that "the Club is offering a limited number of Individual and Family Golf Memberships" and that "The Club anticipates offering Cottage Memberships in the future"); Membership Plan at 2 (same).  However, the Membership Plan stated that "No more than 18 Cottage Memberships can be issued in the Club." [Membership Plan at 4].  Furthermore, Defendants anticipated that Cottage Memberships would cost substantially more than Individual Golf Memberships or Family Golf Memberships, as the Club was required to construct and maintain golf cottages built to designs and specifications of the Cottage Golf Members and approved by the Club.  [Membership Plan at 4].  Although denominated as "cottages," the cottages are actually 3,200 to 5,000 square-foot luxury homes in a gated community with a starting price of $2 million.  http://www.hamiltonfarmgolfclub.com/Default.aspx?p=DynamicModule&pageid=271799&ssid=141758&vnf=1

16.     The FAQ provided to prospective members and the Membership Plan did not provide for any categories of membership other than "Individual Golf Membership," "Family Golf Membership" and "Cottage Golf Membership."

17.     Plaintiffs Meiselman, Rothman and Silvershein were formerly Individual Golf Members of the Club.  Plaintiffs Larry and Sheryl Wyman were formerly Family Golf Members of the Club.

18.     Plaintiff Meiselman joined the Club on December 27, 2003 and delivered to Defendant HFGC a $202,500 Refundable Membership Deposit in connection with his purchase of an Individual Golf Membership.

19.     Plaintiff Rothman joined the Club on March 4, 2003 and delivered to Defendant HFGC a $200,000 Refundable Membership Deposit in connection with his purchase of an Individual Golf Membership.

20.     Plaintiff Silvershein joined the Club on August 28, 2002, and delivered to Defendant HFGC a $200,000 Refundable Deposit in connection with his purchase of an Individual Golf Membership.

21.     Plaintiff Larry Wyman originally joined the Club in August of 2002, and delivered to Defendant HFGC a $200,000 Refundable Deposit in connection with his purchase of an Individual Golf Membership.  On or about April 17, 2006, Plaintiff Larry Wyman upgraded his membership to a Family Golf Membership and delivered to Defendant HFGC an additional $50,000 Refundable Deposit in connection with the membership upgrade.  At that time, Plaintiff Larry Wyman and his wife, Plaintiff Sheryl Wyman, became family members of the Club.

22.     One of the key provisions marketed to Plaintiffs to induce them to purchase memberships in the Club was the refundability of their membership deposits.  For example, at pages 3-4 of the FAQ given to prospective members, Defendant HFGC stated that one of the "special features membership in Hamilton Farm Golf Club" was its "REFUNDABLE MEMBERSHIP DEPOSIT" Defendant, moreover, expressly covenanted that "Resigned members do not have to wait until all New Golf Memberships in the Club have been issued before their resigned membership is reissued." (Emphasis added.)

23.     The procedure for reissuance of resigned memberships and the refund of resigned members' membership deposits is detailed at pages 5-6 of the Membership Plan.  In the section of the Membership Plan entitled "Refund of Membership Deposit," Defendant HFGC covenanted that:

The membership deposit paid by a member will be refunded, without interest, 30 years after the date the membership is issued by the Club.

If the member resigns before the end of the 30-year period, the membership deposit paid by the member or the amount of the membership deposit then charged for the membership, whichever is less, will be refunded, without interest, within 30 days after the issuance of the membership by the Club to a new member. At the end of 30 years, a resigned member will be repaid the difference, if any, between the amount of the original membership deposit paid by the member and the amount refunded to the member after resignation and reissuance of the membership.

(Emphasis added).

24.    The section of the Membership Plan entitled "Transfer of Membership to the Club" further provided that:

Resigned Family and Individual Golf Memberships will be placed on a waiting list and will be reissued on a first-resigned, first-reissued basis as follows:

(a)    Prior to the initial sale of all Family and Individual Golf Memberships, every fourth Golf Membership issued (one in four) will be a resigned Family or Individual Golf Membership from the waiting list. The other three Golf Memberships sold will be from the Club's unissued memberships. This procedure allows the reissuance of resigned Family and Individual Golf Memberships prior to the issuance of all Golf Memberships in the Club.

(Emphasis added).

25.    The Membership Plan further provided resigned members with the option of exchanging their membership for a membership of a lower category (the "Downgrade Option"). Thus, the Membership plan provided that:

In the event Family Member's resigned membership is next on the waiting list to be reissued and a prospective member desires an Individual Golf Membership, the Family Golf Member has the option to (i) retain his position at the top of the waiting list until a Family Membership is desired by a prospective member; or (ii)

6

receive the membership deposit paid by the new member to acquire an Individual Golf Membership, less any amounts owed to the Club, in complete satisfaction of the Club's obligation to repay the resigned member's membership deposit.

[Membership Plan at 6].

26.     Based on the above provisions, Plaintiffs reasonably understood and expected that the proceeds of every fourth membership sold by Defendant HFGC would be available to repay the membership deposits of resigned members, and that resigned members would have their membership deposits repaid in accordance with their priority on the waiting list.

## AS AND FOR A FIRST COUNT:
## BREACH OF CONTRACT

27.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-26 above and incorporate the same herein by reference.

28.     Upon information and belief, subsequent to Plaintiffs' resignations from the Club, Defendant HFGC created new classes of membership in the Club (the "New Golf Memberships") which were not provided for in the Membership Plan or the FAQ provided to Plaintiffs before they were induced to join the Club.

29.     Upon information and belief, the "New Golf Memberships" provide for identical privileges provided for in the Plaintiffs' Individual Golf Memberships and Family Golf Memberships, except that they require lower membership deposits. Upon information and belief, Defendant HFGC is selling the New Golf Memberships for only $100,000, with $50,000 being due when a New Golf Member joins the Club and the remaining $50,000 being due eight (8) years thereafter.

30.     Defendant HFGC knew or should have known that the offering of these New Golf Memberships would have the effect of rendering Plaintiffs' resigned Individual Golf

7

Memberships and Family Golf Memberships unsalable, as no prospective member would be interested in purchasing an Individual Golf Membership or Family Golf Membership when they could have an identical New Golf Membership at a lower cost.

31.    Plaintiffs have demanded that Defendant HFGC refund the membership deposits they paid for their Individual Golf Memberships and Family Golf Memberships out of the proceeds of the sales of every fourth New Golf Membership sold by Defendant HFGC, but Defendant HFGC has refused to refund Plaintiffs' deposits on the purported ground that Plaintiffs are required to remain on the waiting list until new Individual Golf Memberships or Family Golf Memberships are sold.

32.    Upon information and belief, the offering of New Golf Memberships in the Club by Defendants was a subterfuge designed to avoid their obligation to use the proceeds of the sale of every fourth membership sold by Defendant HFGC to refund membership deposits paid by resigned Individual Golf Members and Family Golf Members.

33.    Defendant HFGC breached the Membership Plan by issuing new categories of memberships not provided for in the Membership Plan and, thereby, diluting and violating the Plaintiffs' rights.

34.    Defendant HFGC breached the Membership Plan by failing to use the proceeds of every fourth New Golf Membership sold by Defendant HFGC to refund the membership deposits of resigned Individual Golf Members and Family Golf Members.

35.    In the alternative, and assuming arguendo that Defendant HFGC was entitled to issue new classes of membership in the Club, Defendant HFGC breached the Membership Plan by failing to offer resigned Individual Golf Members and Family Golf Members at the head of the waiting list the opportunity to "downgrade" their Individual Golf Memberships or their

Family Golf Memberships to New Golf Memberships and to exchange their resigned memberships for the membership deposit paid for every fourth New Golf Membership sold by Defendant.

36.     Finally, upon information and belief, Defendant HFGC breached the Membership Plan by preferentially repurchasing certain Individual Golf Memberships and Family Golf Memberships from resigned members lower down on the list of resigned members than Plaintiffs, including memberships formerly held by John Bava, Joseph Matina and David Baum.

37.     Plaintiffs have been directly and foreseeably damaged by Defendant HFGC's breaches of contract.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant HFGC for:

(1) Compensatory damages in an amount to be determined at trial; and

(2) Such other and further relief as the Court may deem just and equitable, including without limitation, Plaintiffs' reasonable attorneys' fees and costs of suit.

**AS AND FOR A SECOND COUNT:
BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

38.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-37 above and incorporate the same herein by reference.

39.     There is implicit in every contract a covenant of good faith and fair dealing.

40.     The covenant of good faith and fair dealing precludes a party to a contract from acting in bad faith and taking an action which is not technically prohibited by the contract but which is calculated to deprive the other party to the contract of the full benefit of his bargain.

41.     Even assuming arguendo that the Membership Plan did not prohibit Defendant HFGC from creating new classes of membership, Defendant HFGC breached the covenant of good faith and fair dealing by creating New Golf Memberships having the same rights and

privileges as Individual Golf Memberships and Family Golf Memberships, doing so for the sole purpose of avoiding its continuing obligation to use the proceeds of the sale of every fourth membership to refund the membership deposits of resigned Individual Golf Members and Family Golf Members.

42.    Plaintiffs have been directly and foreseeably damaged by Defendant HFGC's breaches of the covenant of good faith and fair dealing.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant HFGC for:

(1) Compensatory damages in an amount to be determined at trial; and

(2) Such other and further relief as the Court may deem just and equitable, including without limitation, Plaintiffs' reasonable attorneys' fees and costs of suit.

## AS AND FOR A THIRD COUNT:
## FRAUDULENT CONVEYANCE

43.    Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-42 above and incorporate the same herein by reference.

44.    Upon information and belief, Defendant HFGC has been unable to sell sufficient Individual Golf Memberships and Family Golf Memberships to recoup its equity investments in the Club or to meet its operating expenses.

45.    Upon information and belief, Defendant, at the expense of the rights of existing members, including Plaintiffs, HFGC began selling New Golf Memberships in an effort to raise additional operating capital and to avoid refunding membership deposits to resigned Individual Golf Members and Family Golf Members.

46.    Plaintiffs are "creditors" of Defendant HFGC as defined in N.J.S.A. 25:2-21.

47.    Upon information and belief, Defendant HF Business Trust is an "affiliate" of Defendant HFGC as defined in N.J.S.A. 25:2-21, as HF Business Trust and HFGC are under common ownership and control of an "insider" of HFGC.

48.    On or about October 31, 2008, HFGC entered into a Mortgage and Security Agreement (the "Mortgage") with Defendant HF Business Trust in the amount of "up to $50 million dollars," pursuant to which HFGC granted HF Business Trust a security interest in all of HFGC's assets, including the Club (the "Property").

49.    Upon information and belief, at the time Defendant HFGC entered into the Mortgage with Defendant HF Business Trust, Defendant HFGC was "insolvent" as that term is defined by N.J.S.A. 25:2-23 in that (a) the sum of Defendant HFGC's debts was greater than all of HFGC's assets, at a fair valuation; and (b) HFGC was generally not paying its debts as they became due.

50.    Upon information and belief, Defendant HF Business Trust did not give reasonably equivalent value for the Mortgage, and the Mortgage was a scheme to convert HFGC's equity investment in the Club into a secured debt.

51.    The Mortgage was a fraudulent transfer as to Plaintiffs pursuant to N.J.S.A. 25:2-25(a) because such transfer "was made with the actual intent to hinder, delay or defraud any creditor of the debtor."

52.    The Mortgage was a fraudulent transfer as to Plaintiffs pursuant to N.J.S.A. 2:25-27 because defendant HFGC "made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and [HFGC] was insolvent at that time or [HFGC] became insolvent as the result of the transfer" or because "the transfer

was made to [HF Business Trust] for an antecedent debt, [HFGC] was insolvent at the time, and [HF Business Trust] had reasonable cause to believe that [HFGC] was insolvent."

53.     Plaintiffs will be damaged as the result of the Mortgage, as HFGC will not have sufficient unencumbered assets to satisfy any judgment in favor of Plaintiffs.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendants HFGC and HF Business Trust pursuant to N.J.S.A. 2:25-29:

(1) Avoiding the Mortgage to the extent necessary to satisfy Plaintiff's claims against HFGC;

(2) Enjoining HFGC and HF Business Trust from any further disposition of the Property;

(3) Attaching any Property in the hands of HFGC or HF Business Trust; and

(4) Granting Plaintiffs such other and further relief as the Court may deem just and equitable, including without limitation, Plaintiffs' reasonable attorneys' fees and costs of suit.

BROWN MOSKOWITZ & KALLEN, P.C.
Attorneys for Plaintiffs

By: _____
Bruce A. Schoenberg

Dated:  December 1, 2010

## CERTIFICATION PURSUANT TO RULE 4:5-1

Pursuant to R. 4:5-1, the undersigned hereby certifies that the matter is not the subject of any other action pending or contemplated in any Court or any pending arbitration.

BROWN MOSKOWITZ & KALLEN, P.C.
Attorneys for Plaintiffs

By: _____
Bruce A. Schoenberg

Dated:  December 1, 2010

## JURY DEMAND

The plaintiffs hereby demand a trial by jury of all issues so triable.

BROWN MOSKOWITZ & KALLEN, P.C.
Attorneys for Plaintiffs

By: _____
Bruce A. Schoenberg

Dated:  December 1, 2010

## DESIGNATION OF TRIAL COUNSEL

This office designates Bruce A. Schoenberg and Kenneth L. Moskowitz as trial counsel pursuant to R. 4:5-1(c).

BROWN MOSKOWITZ & KALLEN, P.C.
Attorneys for Plaintiffs

By: _____
Bruce A. Schoenberg

Dated:  December 1, 2010

13

# EXHIBIT A

# FREQUENTLY
# ASKED QUESTIONS

## HAMILTON
## FARM



*Those who have had the rare pleasure of experiencing Hamilton Farm Golf Club are certain that the club is destined to take its place among the world's most exclusive and admired private golf clubs where members consider it both an honor and privilege to belong.*

*The first great golf club of the Twenty-first Century*

The following questions and answers are designed to provide an understanding of Hamilton Farm Golf Club and the membership opportunity available at the Club. As these questions and answers are summary in nature, you should read the Membership Plan and Rules and Regulations prior to purchasing a membership.

Q:   WHAT IS THE MEMBERSHIP OPPORTUNITY AT THE CLUB?

A:   Hamilton Farm Golf Club is a private club located in Somerset County, New Jersey, featuring outstanding golf and social facilities including exceptional golf courses designed by Michael Hurdzan and Dana Fry. The Club is offering a limited number of Individual and Family Golf Memberships. The Club anticipates offering Cottage Memberships in the future.

Q:   WHAT FACILITIES WILL THE CLUB OFFER?

A:   The Hamilton Farm Golf Club facilities available to members, their families and guests include:
   • Highlands Course, an 18-hole championship golf course designed by Michael Hurdzan and Dana Fry of Hurdzan-Fry Golf Design;
   • Hickory Course, an 18-hole par 3 course also designed by Hurdzan-Fry Golf Design;
   • Hamilton House of approximately 20,000 square feet and the ten guest suites therein;
   • Golf Clubhouse of approximately 14,000 square, featuring library areas, men's and women's locker rooms and golf shop;
   • Golf practice facilities, which include a driving range with target greens and putting greens; and
   • Helipad.

X

Access to the following facilities at the Hamilton House and Golf Clubhouse is provided through Social Membership in Hamilton Farm Social Club:

- The formal and informal dining areas, meeting facilities, library, living room and garden room, outdoor terraces and formal gardens, billiard room and wine cellar in the Hamilton House; and
- The indoor grill room and dining and meeting facilities and outdoor terraces in the Golf Clubhouse.
- Hamilton Farm Social Club has made application for a liquor license and issuance of the license is pending.

Q:   HOW MANY MEMBERSHIPS WILL BE AVAILABLE IN THE CLUB?

A:   The combined number of Individual and Family Golf Memberships that can be issued in the Club is limited to 350.   The Club will determine the number of Family and Individual Golf Memberships to be issued from time to time.   Certain persons designated by the Company who acquire a Golf Membership will be known and recognized as "Founder Members".   The maximum number of Founder Members will be 50.   Founder Members will be entitled to such additional benefits as may be determined by the Club.

Q:   WHAT ARE THE PRIVILEGES OF AN INDIVIDUAL GOLF MEMBERSHIP?

A:   An Individual Golf Membership entitles the member to use all of the golf and social facilities of the Club in accordance with the Club's Rules and Regulations.   Individual Golf Members are not required to pay guest fees for use of the golf courses, but are required to pay cart and caddie fees.



which will be charged to the member's Club account. Individual Golf Members are obligated to pay applicable charges for use of the Hamilton House and the Golf Clubhouse, such as charges for overnight accommodations, as determined by the Club from time to time. Guests and family members of an Individual Golf Member may have access to the Club's golf and social facilities as a guest of the Individual Golf Member provided the Individual Golf Member is present and in accordance with the Club's Rules and Regulations, guest policy and full guest fees. Notwithstanding the foregoing, an Individual Golf Member may elect to have his/ or her spouse have full unaccompanied social privileges in the Club Facilities with the payment of additional annual social dues.

Q:   WHAT ARE THE PRIVILEGES OF A FAMILY GOLF MEMBERSHIP?

A:   A Family Golf Membership entitles the member to use all of the golf and social facilities of the Club in accordance with the Club's Rules and Regulations. A Family Golf Member is not required to pay guest fees for use of the golf courses, but is required to pay cart and caddie fees, which will be charged to the member's Club account.

A   Family Golf Member's immediate family will be entitled to use the Club Facilities in accordance with the following provisions. A Family Golf Member's immediate family includes the member's spouse and their unmarried children, under the age of 23, living at home or attending school on a full-time basis. Immediate family members may play golf without payment of guest fees, but are required to pay cart and caddie fees which will be charged to the member's Club account. The spouse of a Family Golf Member may will have access to the Club's golf and social facilities unaccompanied by the member. The Family Golf Member's children, as described above, will have access to the Club's golf and social facilities provided the Family Golf Member or his or her spouse is present and in accordance with unless otherwise provided in the Club's Rules and

Regulations, which may be amended from time to time. The children of the member must pass a junior golfer's evaluation administered by the Club's Golf Professional staff in order to play golf at Hamilton Farm Golf Club. The Club may restrict the times when the immediate family members can play golf either unaccompanied or with the member in its sole discretion from time to time, as provided in the Rules and Regulations. The member's spouse and children must contact the golf shop in advance to determine the availability of the course on the desired day of play.

Family Golf Members are obligated to pay applicable charges for use of the Hamilton House and the Golf Clubhouse, such as charges for overnight accommodations, as determined by the Club from time to time. Guests of a Family Golf Member and his or her immediate family may have access to the Club's golf and social facilities as a guest of the Family Golf Member provided the Family Golf Member or his or her spouse is present and in accordance with the Club's Rules and Regulations, guest policy and guest fees.

In anticipation that there will be children of Family Golf Members who are capable golfers who wish to play golf unaccompanied on a regular basis, provisions for a Junior Golf Membership will be reviewed at a future date.

Q:   WHAT ARE THE SPECIAL FEATURES OF MEMBERSHIP IN HAMILTON FARM GOLF CLUB?

A:   Membership in Hamilton Farm Golf Club offers a number of special features such as:

EXCLUSIVITY. Membership is by invitation only.

X

REFUNDABLE MEMBERSHIP DEPOSIT. The membership deposit paid for a membership is refundable upon resignation and reissuance of the membership, or in 30 years from admission to the Club, whichever is the sooner to occur, as provided in the Membership Plan.

RESIGNED MEMBERSHIPS REISSUED PRIOR TO MEMBERSHIP SELL-OUT. Resigned members do not have to wait until all new memberships in the Club have been issued before their resigned membership is reissued.

NO ASSESSMENTS. Members are not subject to either operating or capital assessments.

INHERITABILITY. Upon the death of a Family Golf Member, the membership may be transferred to his or her spouse, as described further in the Membership Plan.

Q:   WHO IS ELIGIBLE TO ACQUIRE A MEMBERSHIP IN THE CLUB?

A:   Memberships will be offered to select persons who are invited for membership in the Club. A membership will be issued in the name of one individual only, except as otherwise provided in the Membership Plan.

Q:   WHAT AM I REQUIRED TO PAY IN ORDER TO BECOME A MEMBER?

A:   You are required to pay a refundable membership deposit in an amount determined by the Club from time to time. It is expected that the membership deposit required to be paid will increase over time.

X

Q:      WHEN WILL THE MEMBERSHIP DEPOSIT BE REPAID TO THE MEMBER?

A:      Each person who acquires a membership will be entitled to receive a refund of the membership deposit paid for the membership, without interest, 30 years after the date the membership is issued by the Club.

If the member resigns before the end of the 30-year period, the membership deposit paid by the member or the amount of the membership deposit then charged by the Club for the membership, whichever is lesser, will be refunded, without interest, within 30 days after the issuance of the membership by the Club to a new member.  At the end of 30 years, a resigned member will be repaid the difference, if any, between the amount of the original membership deposit paid by the member and the amount refunded to the member after resignation and reissuance of the membership.

In the event a Family Golf Member's resigned membership is next on the waiting list to be reissued and a prospective member desires an Individual Golf Membership, the Family Golf Member has the option to (i) retain his or her position at the top of the waiting list until a Family Membership is desired by a prospective member, or (ii) receive the amount of the membership deposit paid by the new member to acquire an Individual Golf Membership, less any amounts owed to the Club, in complete satisfaction of the Club's obligation to repay the resigned member's membership deposit.  In the latter case, the difference between the membership deposit paid by the new member and the amount refunded to the resigning Family Golf Member will be retained by the Club.  In the case where an Individual Golf Member is at the top of the resale wait list and a prospective member desires a Family Golf Membership, the Club will issue a Family Golf Membership in place of the resigned membership, provided the Club is then issuing new Family Golf Memberships.

X

Q:    CAN MEMBERS BE ASSESSED TO COVER ANY OPERATING DEFICITS OR CAPITAL IMPROVEMENTS?

A:    No.  Members will not be subject to any liability for capital or operating assessments for the costs and expenses of ownership or operation of the Club.  The owner of the Club Facilities will be responsible for any deficits incurred in the operation of the Club and its facilities and for the cost of all capital improvements.

Q:    WHAT OTHER MEMBERSHIPS WILL BE ISSUED IN THE CLUB?

A:    The Club will issue up to 15 Honorary Memberships to persons and entities designated by the Club.  These memberships may count against the limit on the number of memberships that can be issued in the Club in the category of membership in which the Honorary Membership has been issued.

Q:    HOW WILL THE CLUB KEEP ABREAST OF THE DESIRES OF THE MEMBERS?

A:    The Club is committed to providing the types of services, programs, activities and events that the membership is desirous of having.  A Board of Governors Club Committee composed of members of the Club will be formed and will enable members to have input on the foregoing items as well as other matters that are of concern to the members.

X

Q:   How may I obtain a membership in the Club?

A:   Membership is by invitation only.  In order to be eligible for an invitation to membership in the Club, the prospective member must be sponsored by an existing member, who shall submit a Nomination Form.  The prospective member must also submit such forms as may be required by the Club.  Upon approval of the nominee by the Club's Membership Committee, invitation to membership will be extended to the nominee on behalf of the member sponsor.

Q:   If I have been invited for membership, how do I become a member?

A:   To become a member of the Club, you must submit to the Club a fully completed and signed Membership Agreement and a check in U.S. funds for the amount required in respect of the membership deposit made payable to Hamilton Farm Golf Club, LLC.  The Membership Agreement and required amount should be submitted to the Membership Director at Hamilton Farm Golf Club.

Q:   What if I have additional questions?

A:   Please contact the Membership Director at:
     Hamilton Farm Golf Club, 1040 Pottersville Road, Gladstone, New Jersey 07934
     (908) 901-4000

X

# EXHIBIT B



# HAMILTON FARM GOLF CLUB

# MEMBERSHIP PLAN

*1040 Pottersville Road, Gladstone, New Jersey 07934*
TELEPHONE *908.901.4000,* FACSIMILE *908.901.4001*

# HAMILTON FARM GOLF CLUB

## MEMBERSHIP PLAN OVERVIEW

### MEMBERSHIP OPPORTUNITY

This Membership Plan describes the membership opportunity at Hamilton Farm Golf Club. The Club, which is located in Somerset County, New Jersey, features outstanding golf and social facilities including exceptional golf courses designed by Michael Hurdzan and Dana Fry. Membership in the Club is by invitation only.

### MEMBERSHIP CATEGORIES AND PRIVILEGES

The Club is presently offering Family Golf Memberships and Individual Golf Memberships. The privileges associated with these Golf Memberships are more fully described in this Membership Plan. Honorary Memberships will also be issued in Hamilton Farm Golf Club. The Club anticipates offering Cottage Memberships in the future.

### SPECIAL MEMBERSHIP BENEFITS

In addition to world-class facilities and a commitment to excellence in service and operations, membership in the Club offers a number of attractive benefits, including:

- **Exclusivity.** Membership is by invitation only.

- **Refundable Membership Deposit.** The membership deposit paid for a membership is refundable upon resignation and reissuance of the membership, or in 30 years from admission to the Club, whichever is the sooner to occur, as provided in this Membership Plan.

- **Resigned Memberships Reissued Prior to Membership Sell-out.** Resigned members do not have to wait until all new memberships in the Club have been issued before their resigned membership is reissued.

- **No Assessments.** Members are not subject to either operating or capital assessments.

- **Inheritability.** Upon the death of a Family Golf Member, the membership may be transferred to his or her spouse, as described further in this Membership Plan.

### AVAILABILITY OF MEMBERSHIPS IS LIMITED

The maximum number of Golf Memberships permitted to be issued in the Club is 350. The Club may issue up to 15 Honorary Memberships to persons designated by the Club. Honorary Memberships may count against the limit on Golf Memberships. This limitation on the number of memberships is important to ensure exclusivity and members' enjoyment of the Club's outstanding facilities.

## CAREFULLY REVIEW ALL MEMBERSHIP DOCUMENTS

Every person who desires to obtain a membership should carefully read this Membership Plan and all of the referenced documents and should seek professional advice to evaluate these documents.

## RELY ONLY ON INFORMATION IN THIS MEMBERSHIP PLAN

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS NOT CONTAINED IN THIS MEMBERSHIP PLAN AND THE REFERENCED DOCUMENTS AND, IF GIVEN OR MADE, SUCH INFORMATION MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE CLUB. IN THE EVENT OF A CONFLICT BETWEEN THE TERMS OF MEMBERSHIP CONTAINED IN THE MEMBERSHIP PLAN, RULES AND REGULATIONS AND MEMBERSHIP AGREEMENT WITH OTHER PRINTED MATERIALS, THE MEMBERSHIP PLAN, RULES AND REGULATIONS AND MEMBERSHIP AGREEMENT SHALL GOVERN.

## MEMBERSHIPS AT THE CLUB ARE OFFERED ONLY FOR RECREATIONAL PURPOSES

MEMBERSHIPS AT THE CLUB ARE BEING OFFERED EXCLUSIVELY FOR THE PURPOSE OF PERMITTING MEMBERS THE RECREATIONAL USE OF THE CLUB FACILITIES. MEMBERSHIPS SHOULD NOT BE VIEWED AS AN INVESTMENT AND NO MEMBER SHOULD EXPECT TO DERIVE ANY ECONOMIC PROFITS FROM MEMBERSHIP AT THE CLUB.

NO FEDERAL OR STATE AUTHORITY HAS PASSED UPON OR ENDORSED THE MERITS OF THIS MEMBERSHIP PLAN.

## MEMBERSHIP PROCESS

Membership is by invitation only. In order to be eligible for an invitation to membership in the Club, the prospective member must be sponsored by an existing member, who shall submit a Nomination Form. The prospective member must also submit such forms as may be required by the Club. Upon approval of the nominee by the Club's Membership Committee, invitation to membership will be extended to the nominee on behalf of the member sponsor. Persons who are invited for membership in the Club must comply with the following requirements:

A.    Fully complete and execute the Membership Agreement.

B.    Deliver or mail to the Membership Director at the Club: (i) the completed and executed Membership Agreement, and (ii) a check in U.S. funds for the amount required in respect of the membership deposit.

## MEMBERSHIP OFFICE AVAILABLE TO ANSWER QUESTIONS

All inquiries regarding membership in the Club or this Membership Plan and referenced documents should be directed to the Membership Office at Hamilton Farm Golf Club or by calling (908) 901-4000. You may call or visit the Membership Office, conveniently located at 1040 Pottersville Road, Gladstone, New Jersey 07934. No appointment is necessary, although one is recommended.

# TABLE OF CONTENTS

CLUB MEMBERSHIP AND FACILITIES ............................................................1
   Membership Features ....................................................................................1
   Club Facilities ..............................................................................................1
   Additional Club Facilities ............................................................................1
   Golf Cottages ...............................................................................................2
   Ownership of Club Facilities ........................................................................2

MEMBERSHIP CATEGORIES AND PRIVILEGES .....................................2
   Categories of Membership ............................................................................2
   Founder Members .........................................................................................2
   Individual Golf Membership Privileges ........................................................2
   Family Golf Membership Privileges .............................................................3
   Cottage Membership Privileges ...................................................................3
   Upgrade and Downgrade of Membership .....................................................4

NUMBER OF MEMBERSHIPS .......................................................................4
   Limit on the Number of Memberships ..........................................................4

OFFERING OF MEMBERSHIPS .....................................................................4
   Offering of Memberships ..............................................................................4
   Reserved Memberships .................................................................................5
   Membership May Be Held in the Name of a Legal Entity ..............................5

MEMBERSHIP DEPOSIT AND TRANSFER OF MEMBERSHIP ...............5
   Membership Deposit Required to Acquire a Membership ..............................5
   Refund of Membership Deposit ....................................................................5
   Deduction of Amounts Owed to the Club .....................................................6
   Member May Continue Membership at End of 30 Years ...............................6
   Transfer of Membership to the Club .............................................................6
   Payment of Dues by a Resigned Member ......................................................7
   Death of a Member .......................................................................................7
   Legal Separation or Divorce .........................................................................7
   The Club May Repurchase Memberships ......................................................8
   Tax Consequences of Acquiring a Membership ............................................8

DUES AND CHARGES ....................................................................................8
   Dues, Fees and Charges ................................................................................8
   No Assessments Against Members ................................................................8
   Membership Year of the Club .......................................................................8
   Dues and Other Fees Paid in Advance Will Be Prorated when the Membership Is Reissued ...........9

ACKNOWLEDGMENT OF MEMBERSHIP RIGHTS .................................9
   Members' Acknowledgment ..........................................................................9

MEMBERSHIP PROCEDURES ......................................................................9
   Invitation for Membership ............................................................................9
   Membership Process .....................................................................................10
   The Rights of Members to Use the Club Facilities Are Governed Only By This Membership Plan ...........10

OTHER USE PRIVILEGES IN THE CLUB ...................................................10
   Honorary Members .......................................................................................10
   Promotional Use, Tournament or Group Play and Other Users ......................10

iv

**CLUB OPERATIONS** ..................................................................................................................**10**
    Management and Control of the Club .............................................................................10
    Club Committee ...............................................................................................................11
    Right of First Offer ..........................................................................................................11

**MISCELLANEOUS PROVISIONS** .........................................................................................**11**
    Membership Director Available to Answer Inquiries.......................................................11

June 2001,
amended February 2002

v

# CLUB MEMBERSHIP AND FACILITIES

## MEMBERSHIP FEATURES

Membership in Hamilton Farm Golf Club offers the opportunity to belong to a private club having outstanding golf and social facilities. The terms of membership are described in this Membership Plan, the Rules and Regulations and the Membership Agreement.

## CLUB FACILITIES

The Hamilton Farm Golf Club facilities available to members, their families and guests include:

- Highlands Course, an 18-hole championship golf course designed by Michael Hurdzan and Dana Fry of Hurdzan-Fry Golf Design;

- Hickory Course, an 18-hole par 3 course also designed by Hurdzan-Fry Golf Design;

- Hamilton House of approximately 20,000 square feet and the ten guest suites therein;

- Golf Clubhouse of approximately 14,000 square, featuring library areas, men's and women's locker rooms and golf shop;

- Golf practice facilities, which include a driving range with target greens and putting greens; and

- Helipad.

The ten guest suites in the Hamilton House may be used by members and their guests upon payment of applicable fees as determined by the Club from time to time.

Access to the following facilities at the Hamilton House and Golf Clubhouse is provided through Social Membership in Hamilton Farm Social Club:

- The formal and informal dining areas, meeting facilities, library, living room and garden room, outdoor terraces and formal gardens, billiard room and ' cellar in the Hamilton House; and

- The indoor grill room and dining and meeting facilities and outdoor terraces in the Golf Clubhouse.

Hamilton Farm Social Club has made application for a liquor license and issuance of the license is pending.

## ADDITIONAL CLUB FACILITIES

The Club may, in its sole discretion, expand or add additional facilities to the Club Facilities as it determines appropriate from time to time, either on or off site.

1

## GOLF COTTAGES

It is anticipated that the Club will develop up to 18 Golf Cottages as part of the Club Facilities. In conjunction with the development of the Golf Cottages, the Club anticipates the offering of Cottage Memberships in the future. Cottage Memberships are expected to provide the exclusive use of a Golf Cottage in addition to use of all the golf and social facilities of the Club. Cottage Memberships would be offered to business organizations and individuals who are invited for membership.

## OWNERSHIP OF CLUB FACILITIES

Hamilton Farm Golf Club, LLC, a Delaware limited liability company (the "Company"), owns and operates the Club Facilities. The Company has leased the food and beverage facilities at the Hamilton House and the Clubhouse to Hamilton Farm Social Club, Inc. The Club and the Company are hereinafter sometimes collectively referred to as the "Club".

# MEMBERSHIP CATEGORIES AND PRIVILEGES

## CATEGORIES OF MEMBERSHIP

The Club is offering a limited number of Family and Individual Golf Memberships. Honorary Memberships will also be issued in Hamilton Farm Golf Club. The Club anticipates offering Cottage Memberships in the future.

## FOUNDER MEMBERS

Certain persons designated by the Company who acquire a Golf Membership in the Club will be known and recognized at the Club as "Founder Members". Founder Members will be entitled to special benefits at the Club as determined by the Company. The maximum number of Founder Members shall be 50.

## INDIVIDUAL GOLF MEMBERSHIP PRIVILEGES

An Individual Golf Membership entitles the member to use all of the golf and social facilities of the Club in accordance with the Club's Rules and Regulations. Individual Golf Members are not required to pay greens fees for use of the golf courses, but are required to pay cart and caddie fees, which will be charged to the member's Club account. Individual Golf Members are obligated to pay applicable charges for use of the Hamilton House and the Golf Clubhouse, such as charges for overnight accommodations, as determined by the Club from time to time. Guests and family members of an Individual Golf Member may have access to the Club's golf and social facilities as a guest of the Individual Golf Member provided the Individual Golf Member is present and in accordance with the Club's Rules and Regulations, guest policy and guest fees. Notwithstanding the foregoing, an Individual Golf Member may elect to have his or her spouse have full unaccompanied social privileges in the Club Facilities with the payment of additional annual social dues.

2

# FAMILY GOLF MEMBERSHIP PRIVILEGES

A Family Golf Membership entitles the member to use all of the golf and social facilities of the Club in accordance with the Club's Rules and Regulations. A Family Golf Member is not required to pay greens fees for use of the golf courses, but is required to pay cart and caddie fees, which will be charged to the member's Club account.

A Family Golf Member's immediate family will be entitled to use the Club Facilities in accordance with the following provisions. A Family Golf Member's immediate family includes the member's spouse and their unmarried children, under the age of 23, living at home or attending school on a full-time basis. Immediate family members may play golf without payment of greens fees, but are required to pay cart and caddie fees which will be charged to the member's Club account. The spouse of a Family Golf Member will have access to the Club's golf and social facilities unaccompanied by the member. The Family Golf Member's children, as described above, will have access to the Club's golf and social facilities provided the Family Golf Member or his or her spouse is present unless otherwise provided in the Club's Rules and Regulations, which may be amended from time to time. The children of the member must pass a junior golfer's evaluation administered by the Club's Golf Professional staff in order to play golf at Hamilton Farm Golf Club. The Club may restrict the times when the immediate family members can play golf either unaccompanied or with the member in its sole discretion from time to time, as provided in the Rules and Regulations. The member's spouse and children must contact the golf shop in advance to determine the availability of the course on the desired day of play.

Family Golf Members are obligated to pay applicable charges for use of the Hamilton House and the Golf Clubhouse, such as charges for overnight accommodations, as determined by the Club from time to time. Guests of a Family Golf Member may have access to the Club's golf and social facilities provided the Family Golf Member or his or her spouse is present and in accordance with the Club's Rules and Regulations, guest policy and guest fees.

In anticipation that there will be children of Family Golf Members who are capable golfers who wish to play golf unaccompanied on a regular basis, provisions for a Junior Golf Membership will be reviewed at a future date.

# COTTAGE MEMBERSHIP PRIVILEGES

As with the Golf Membership, it is anticipated that Cottage Members will not be required to pay greens fees for the use of golf courses, but would be required to pay cart and caddie fees, which would be charged to the member's Club account. Other anticipated benefits of a Cottage Membership include the Cottage Member's ability to invite guests to use the member's Golf Cottage in accordance with the Club's Rules and Regulations. Further, at the discretion of the Club's Executive Committee, the Cottage Member may be entitled to limited unaccompanied guest play privileges at a future date.

In addition to the Cottage Member, it is anticipated that there will be up to five users (Cottage Membership designees) who are approved for membership that would be permitted under each Cottage Membership, and would have access to the Club's golf and social facilities.

3

It is expected that the Club will build each Golf Cottage per approved plans and specifications and will provide the Cottage Member with specific allowances for construction of the basic cottage and "fit-up" of the interior. The membership deposit paid for a Cottage Membership will be refundable upon resignation of the membership and reissuance of the Cottage Membership to another member for at least the same amount.

The Cottage Member would be required to keep the cottage in good condition and working order and to leave the cottage in the same condition as existed at commencement of the membership privileges upon resignation, normal wear and tear excluded. Any damages to the cottage will be repaired by the Club and the cost of the same will be deducted from the refund otherwise due the member. The Cottage Member may be required to make the cottage available for nightly rental by other Club Members and their guests when not in use by Cottage Member. The Cottage Member would receive the income from the rental of the cottage minus a fee to the Club. Cottage Members would be required to pay for all operating and common area maintenance charges associated with the Club's management, care and servicing of their respective Golf Cottages.

## UPGRADE AND DOWNGRADE OF MEMBERSHIP

An Individual Golf Member may upgrade to a Family Golf Membership by paying the difference between the membership deposit for the Family Golf Membership then in effect and the membership deposit paid by the member for the Individual Golf Membership. A Family Golf Member may downgrade to an Individual Golf Membership. No refund shall be paid to the member at the time of the downgrade. However, the member will be entitled to a refund of the membership deposit paid for the Family Golf Membership upon resignation and reissuance of the Individual Golf Membership or in 30 years, as provided hereinafter.

# NUMBER OF MEMBERSHIPS

## LIMIT ON THE NUMBER OF MEMBERSHIPS

The combined number of Family and Individual Golf Memberships which can be issued in the Club is limited to 350. The Club will determine the number of Family and Individual Golf Memberships to be issued from time to time. Depending on usage and play patterns and the ability of the Company to secure the necessary governmental approval, the number of memberships may be increased. No more than 18 Cottage Memberships can be issued in the Club. Each designated user under a Cottage Membership shall count as one membership against the limit on the number of Golf Memberships which can be issued in the Club. The Club reserves the right, in its sole discretion, to issue less than the maximum number of Golf and Cottage Memberships permitted.

# OFFERING OF MEMBERSHIPS

## OFFERING OF MEMBERSHIPS

Memberships will be offered to such persons and entities as the Club determines appropriate from time to time who are invited for membership in the Club. Membership in the Club is by

invitation only.  Memberships (including Family and Individual Golf Memberships) which are issued to individuals will be issued in the name of one individual only.

## RESERVED MEMBERSHIPS

All of the unissued memberships will be reserved by the Club and will not be considered to be available memberships in the Club.  The Club may not be compelled to sell a reserved membership.  The Club may issue a reserved membership to any person whom the Club, in its sole discretion, determines appropriate from time to time.

## MEMBERSHIP MAY BE HELD IN THE NAME OF A LEGAL ENTITY

A person who has been invited for membership in the Club can request that the membership be issued in the name of a partnership, company, trust or other form of multiple ownership (the "entity") approved by the Club.  The entity must designate one individual as the user of the membership.  Both the entity and the designated individual must submit a Membership Agreement.  The person invited for membership must also be a bona fide director, officer, partner, shareholder or employee of the entity, or a beneficiary or settlor if the membership is held in the name of a trust, and shall be responsible along with the entity for all applicable dues, fees and charges.  The entity may change the designated user prior to the start of each membership year in accordance with the rules and regulations of the Club and upon payment of the redesignation fee established by the Club.  No person other than the designated user and his or her family members, if a Family Golf Membership has been acquired, will be entitled to simultaneously use the membership.  Upon the death of the designated user, the surviving spouse, if any, of the designated user may become the new user of a Family Golf Membership, provided the surviving spouse has a relationship with the entity as provided above and is approved by the Club for such status.  If there is no surviving spouse or the surviving spouse does not desire to continue the Family Golf Membership privileges or is not approved as the user of the membership, then the membership shall be deemed resigned and shall be reissued in the same fashion as any other resigned membership.  Upon reissuance of the membership, the membership deposit shall be refunded to the entity as provided hereinafter.  The Club reserves the right to restrict or eliminate this privilege and to establish such rules with respect thereto as it may determine.

# MEMBERSHIP DEPOSIT AND TRANSFER OF MEMBERSHIP

## MEMBERSHIP DEPOSIT REQUIRED TO ACQUIRE A MEMBERSHIP

Each person who desires to become a member in the Club will be required to pay a membership deposit to the Club in the amount in effect at the time the person acquires the membership as set forth in the Membership Agreement.  The amount of the required membership deposit will be determined by the Club from time to time.

## REFUND OF MEMBERSHIP DEPOSIT

The membership deposit paid by a member will be refunded, without interest, 30 years after the date the membership is issued by the Club.

If the member resigns before the end of the 30-year period, the membership deposit paid by the member or the amount of the membership deposit then charged by the Club for the membership, whichever is less, will be refunded, without interest, within 30 days after the issuance of a new member. At the end of 30 years, a resigned member will be repaid the difference, if any, between the amount of the original membership deposit paid by the member and the amount refunded to the member after resignation and reissuance of the membership.

The Club's obligation to the member shall be evidenced by the Membership Agreement. The difference between the membership deposit paid by the new member and the membership deposit refunded to the resigning member will be retained by the Club.

## DEDUCTION OF AMOUNTS OWED TO THE CLUB

The Club will deduct from any amount to be paid to the member any amount which the member owes to the Club.

## MEMBER MAY CONTINUE MEMBERSHIP AT END OF 30 YEARS

A member who continues to be a member for 30 years may elect to continue his or her membership at the end of the 30-year period until the member subsequently resigns from the Club by paying the then current membership dues, fees and charges. Any member who elects to continue his or her membership at the end of the 30-year period will not be counted toward any cap or limit on the total number of members or the number of members in any category.

## TRANSFER OF MEMBERSHIP TO THE CLUB

Resigned Family and Individual Golf Memberships will be placed on a waiting list and will be reissued on a first-resigned, first-reissued basis as follows:

(a)     Prior to the initial sale of all Family and Individual Golf Memberships, every fourth Golf Membership issued (one in four) will be a resigned Family or Individual Golf Membership from the waiting list, provided there is a resigned Family or Individual Golf Membership on the waiting list. The other three Golf Memberships sold will be from the Club's unissued memberships. This procedure allows the reissuance of resigned Family and Individual Golf Memberships prior to the issuance of all Golf Memberships in the Club.

(b)     After the initial sale of all Golf Memberships, each Family or Individual Golf Membership issued will be a resigned membership from the waiting list.

In the event a Family Golf Member's resigned membership is next on the waiting list to be reissued and a prospective member desires an Individual Golf Membership, the Family Golf Member has the option to (i) retain his or her position at the top of the waiting list until a Family Golf Membership is desired by a prospective member, or (ii) receive the amount of the membership deposit paid by the new member to acquire an Individual Golf Membership, less any amounts owed to the Club, in complete satisfaction of the Club's obligation to repay the resigned member's membership deposit. In the latter case, the difference between the membership deposit paid by the new member and the amount refunded to the resigning Family Golf Member will be retained by the Club. In the case where an Individual Golf Member is at the top of the resale

6

waiting list and a prospective member desires a Family Golf Membership, the Club will issue a Family Golf Membership in place of the resigned membership, provided the Club is then issuing new Family Golf Memberships.

There is no guarantee that a membership will ever be reissued or reissued within a specified time period, because reissuance is dependant upon another person desiring the membership and the Club's approval of the prospective member. A member who resigns from Hamilton Farm Social Club shall automatically be deemed to have also resigned from the Club.

## PAYMENT OF DUES BY A RESIGNED MEMBER

A resigned member shall be obligated to continue to pay dues, fees and other charges associated with the resigned membership until the earlier of: (i) the reissuance of the membership by the Club, or (ii) the end of the membership year in which the resignation occurs. A resigned member shall be permitted to use the Club Facilities as long as the dues, fees and other charges continue to be paid. In the event that any amounts owing to the Club by a resigned member are past due, the Club reserves the right to move the member's resigned membership to the bottom of the reissuance waiting list until all amounts owing have been paid in full.

## DEATH OF A MEMBER

Upon the death of a Family Golf Member, the membership will be transferred to the member's surviving spouse without the payment of any additional membership deposit, provided the surviving spouse applies for and is approved for membership in the Club. If there is no surviving spouse, or the surviving spouse does not apply for membership, or if the surviving spouse applies and is not approved for membership in the Club, the membership shall be deemed resigned and shall be reissued in the same fashion as any other resigned membership. The deceased member's estate will be repaid the membership deposit as herein provided within 30 days after reissuance of the membership.

Upon the death of an Individual Golf Member, the membership shall be deemed resigned and the membership deposit will be refunded to the deceased member's estate within 30 days after reissuance of the membership.

## LEGAL SEPARATION OR DIVORCE

In the event a member is legally separated or divorced from his or her spouse, title to the membership, including all rights and benefits to the holder thereof, shall remain in the member's name. In the event a final, non-appealable order of a court having jurisdiction awards the membership to the member's spouse, the membership shall be deemed resigned and placed on the waiting list to be reissued. The membership will be reissued by the Club on the same basis as any other resigned membership. Upon reissuance of the membership, the spouse shall be entitled to the refund of the membership deposit unless a court order directs otherwise. The member shall be required to give written notice to the Club of a divorce or legal separation. The member shall remain responsible for the payment of all dues, fees and charges associated with the membership. In the case of legal separation, a Family Golf Member may in his or her discretion restrict use of the Club Facilities by family members designated by the member by giving written notice to the Club together with proof of the legal separation.

7

## THE CLUB MAY REPURCHASE MEMBERSHIPS

The Club may, in its sole and absolute discretion, but is not obligated to, repurchase a resigned membership on any terms which are mutually agreeable to the Club and the resigned member. Any membership so repurchased shall be added to the Club's reserved memberships.

## TAX CONSEQUENCES OF ACQUIRING A MEMBERSHIP

The Club makes no representations and expresses no opinions regarding the federal, state or local income tax consequences of acquiring a membership or with respect to any membership deposits paid to the Club. All persons acquire their membership subject to all applicable tax laws, as the same may be amended from time to time. Certain provisions of the Internal Revenue Code may impute interest income to a lender with respect to a non-interest bearing loan. It does not appear that these provisions currently apply to membership deposits paid to the Club. There can, however, be no guarantee that the Internal Revenue Service will not in the future apply imputed interest rules to the membership deposits. Accordingly, members should consult with their own tax advisors with respect to the tax consequences of any membership deposits.

# DUES AND CHARGES

## DUES, FEES AND CHARGES

The Club will determine the amount of dues, fees and charges to be payable by members each year. Dues shall be payable in advance on an annual basis on or before January 1 of each year, unless otherwise determined by the Club from time to time. The current dues, fees and charges for use of the Club Facilities are indicated on the Schedule of Dues, Fees and Charges. The amount of dues, fees and other charges is subject to change from time to time by the Club.

## NO ASSESSMENTS AGAINST MEMBERS

Members will only pay membership dues, fees and other charges established from time to time by the Club. Members will not be subject to any liability for capital or operating assessments for the costs and expenses of ownership or operation of the Club Facilities. The Company will pay all operating deficits incurred in the operation of the Club Facilities and will retain all operating revenues resulting from operation of the Club Facilities. The foregoing prohibition against the assessment of members shall not prevent increases in dues, fees and other charges as determined by the Club from time to time.

## MEMBERSHIP YEAR OF THE CLUB

The Club's membership year will constitute the 12-month period commencing January 1 and ending December 31, unless otherwise established by the Club from time to time.

## DUES AND OTHER FEES PAID IN ADVANCE WILL BE PRORATED WHEN THE MEMBERSHIP IS REISSUED

If a membership is reissued during a membership year, the resigned member shall be entitled to a refund of a pro rata portion of any dues and other fees paid in advance for which services have yet to be rendered.

# ACKNOWLEDGMENT OF MEMBERSHIP RIGHTS

## MEMBERS' ACKNOWLEDGMENT

Membership in the Club permits the member to use the Club Facilities in accordance with this Membership Plan and the Rules and Regulations of the Club. Membership in the Club is not an investment in the Company or the Club Facilities and does not give a member a vested or prescriptive right or easement to use the Club Facilities. Membership in the Club does not provide a member with an equity or ownership interest or any other property interest in the Company or the Club Facilities. A member only acquires a revocable license to use the Club Facilities in accordance with the terms and conditions of this Membership Plan and the Rules and Regulations, as the same may be amended from time to time, and the Membership Agreement. The Club reserves the right to modify this Membership Plan and the Rules and Regulations in its sole discretion, to reserve memberships, to sell, lease or otherwise dispose of the Club Facilities in any manner whatsoever and to any person whomsoever, subject to the Right of First Offer provided to the members in this Membership Plan, to add, issue or modify any type or category of membership, to recall any membership or memberships at any time for any or no reason whatsoever, to convert the Club into a member-owned club, and to make any other changes in the terms and conditions of membership or in the Club Facilities available for use by members. In the event that the Club Facilities are sold and the buyer assumes liability for the repayment of the appropriate membership deposit as provided in each Membership Agreement, the member shall look solely to the new owner for repayment of the membership deposit and the seller of the Club Facilities shall be released from all liability for the repayment thereof. In the event of a sale of the Club Facilities, the buyer shall take title subject to the terms and provisions of the then existing Membership Plan.

In the event of recall of a membership or memberships, the Club will refund the membership deposit paid to the affected member(s) within 30 days.

# MEMBERSHIP PROCEDURES

## INVITATION FOR MEMBERSHIP

Membership is by invitation only. In order to be eligible for an invitation to membership in the Club, the prospective member must be sponsored by an existing member, who shall submit a Nomination Form. The prospective member must also submit such forms as may be required by the Club. The determination of whether an individual will be invited for membership shall be made by the Membership Committee appointed from time to time by the Company, in its sole and absolute discretion.

## MEMBERSHIP PROCESS

A person who has been invited for membership in the Club must mail or deliver to the Membership Director at the Club a fully completed and signed Membership Agreement and a check in U.S. funds for the amount required in respect of the membership deposit.

## THE RIGHTS OF MEMBERS TO USE THE CLUB FACILITIES ARE GOVERNED ONLY BY THIS MEMBERSHIP PLAN

Members of the Club agree to be bound by the terms and conditions of this Membership Plan and the Rules and Regulations of the Club, as they may be amended from time to time, and irrevocably agree to fully substitute the membership privileges acquired pursuant to this Membership Plan for any present or prior rights in or to use the Club Facilities.

# OTHER USE PRIVILEGES IN THE CLUB

## HONORARY MEMBERS

The Club will issue up to 15 Honorary Memberships to such persons and entities as the Club determines appropriate from time to time. These Honorary Memberships may count against the limit on the number of memberships that can be issued in Hamilton Farm Golf Club in the category of membership in which the Honorary Membership has been issued. Honorary Memberships will be issued on such terms and conditions as determined by the Club.

## PROMOTIONAL USE, TOURNAMENT OR GROUP PLAY AND OTHER USERS

The Club will have the right to designate persons, including prospective purchasers of a membership in the Club and officers and staff of the Club, to use the Club Facilities upon such terms and conditions as may be determined from time to time by the Club. Additionally, the Club reserves the right to restrict or to otherwise reserve in advance the Club Facilities for maintenance, tournament, group or individual play, outings and other special events from time to time. Tournaments, special events and the like will be scheduled so as not to materially impair enjoyment of the Club Facilities by members.

# CLUB OPERATIONS

## MANAGEMENT AND CONTROL OF THE CLUB

The Company is solely responsible for the government and administration of the Club Facilities and the Club and will have the exclusive authority to accept members, set dues, fees and charges, establish rules and regulations and control the management and affairs of the Club Facilities and the Club. The Company has retained a management company to manage and operate the Club Facilities.

## CLUB COMMITTEE

The Club will establish a Club Committee composed of members whose purpose includes fostering good relations between the members and management of the Club, providing the members with input on programs, plans and activities of the Club, and advising on the Club's policies and rules and regulations. The members of the Club Committee will be appointed by the Club for specific terms. The management of the Club shall meet with the Club Committee on a periodic basis to discuss the operation of the Club Facilities. The Club Committee shall have no duty or power to negotiate or otherwise act on behalf of the Club, its management or the members of the Club, and shall serve only in an advisory capacity. The management of the Club will have the final authority on all matters concerning the Club Facilities and the members of the Club, including, without limitation, the invitation and admission of members and all programs and activities at the Club.

## RIGHT OF FIRST OFFER

If the Company desires to sell the Club Facilities or a significant portion thereof, the Company shall present the members with an offer to sell the Club Facilities or applicable portion thereof.

Upon presentation of the offer, the Club Committee shall form an acquisition committee composed of members of the Club to pursue a possible sales transaction with the Company. The members shall have a period of 90 days to accept the offer by a majority vote of the membership. Upon acceptance of the offer, the members shall have a period of 120 days to consummate the transaction subject to the fault of the Company.

In the event that the members elect not to accept the offer, or if a transaction is agreed upon and not ultimately consummated within the prescribed period, then the Company shall thereafter be free to sell the Club Facilities or applicable portion thereof to any other party upon any terms and conditions deemed acceptable to the Company in its sole and absolute discretion. Notwithstanding the foregoing, in the case where the members elect not to accept the offer, the purchase price in a sales transaction with another party must be at least equal to that presented to the members should the sale occur within two years thereafter. A purchaser of the Club Facilities or portion thereof shall acquire title subject to the terms and provisions of the Membership Plan then existing. If the Club Facilities or applicable portion thereof are not sold within two years after the Company was free to sell the same based on an inability to negotiate a sale transaction, the members will again be entitled to receive an offer to sell the Club Facilities or a significant portion thereof from the Company as herein provided.

The foregoing provisions concerning the presentation of an offer to the members shall not apply to the sale of any or all of the Club Facilities to an affiliated entity or to an equity conversion.

# MISCELLANEOUS PROVISIONS

## MEMBERSHIP DIRECTOR AVAILABLE TO ANSWER INQUIRIES

Should you have any questions concerning this Membership Plan or the membership opportunities available at the Club, please contact the Membership Director at (908) 901-4000.

EXHIBIT 2

**BROWN MOSKOWITZ & KALLEN, P.C.**
75 Main Street, Suite 203
Millburn, New Jersey 07041
(973) 376-0909
Attorneys for Plaintiffs

|  |  |
|---|---|
| **KENNETH M. MEISELMAN, BRIAN ROTHMAN, GREG SILVERSHEIN and LARRY and SHERYL WYMAN,**<br><br>Plaintiffs,<br><br>vs.<br><br>**HAMILTON FARM GOLF CLUB, LLC and HF BUSINESS TRUST,**<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: SOMERSET COUNTY<br><br>Docket No.: SOM-L-2114-10<br><br>Civil Action<br><br>**SUMMONS** |

*THE STATE OF NEW JERSEY, TO DEFENDANT:*

       HF Business Trust
       c/o Michael Swanenburg, Esq.
       11311 McCormick Road
       Suite 470
       Hunt Valley, Maryland 21031

       YOU ARE HEREBY SUMMONED in a Civil Action in the Superior Court of New Jersey, instituted by the above named Plaintiffs, Kenneth M. Meiselman, Brian Rothman, Greg Silvershein and Larry and Sheryl Wyman, and are required to serve upon Brown Moskowitz & Kallen, P.C., the attorneys for the plaintiffs, whose name and office address appears above, an Answer to the annexed Complaint within thirty five (35) days after the service of the Summons and Complaint upon you, exclusive of the day of service. If you fail to answer, Judgment by default may be rendered against you for the relief demanded in the Complaint. You shall promptly file your Answer and proof of service thereof with the Clerk of Court, Superior Court of New Jersey, Somerset Vicinage, Law Division, Somerset County Justice Center, 20 North

Bridge Street, P.O. Box 3000, Somerville, NJ 08876-7000, in accordance with the Rules of Civil Practice and Procedure.

     If you cannot afford to pay an attorney, call a Legal Services Office.  An individual not eligible for free legal assistance may obtain a referral to an attorney by calling a county lawyer referral service.  These numbers may be listed in the yellow pages of your phone book.  The phone numbers for the county in which this action is pending are: Lawyer Referral Service, (908) 685-2323; Legal Services Office (908) 231-0840.

Dated:  January 4, 2011

                                                   */s/ Christina P. Higgins*
                                                   Christina P. Higgins
                                                   Clerk of the Superior Court (Acting)

2

**BROWN MOSKOWITZ & KALLEN, P.C.**
75 Main Street, Suite 203
Millburn, New Jersey 07041
(973) 376-0909
Attorneys for Plaintiffs

| | |
|---|---|
| **KENNETH M. MEISELMAN, BRIAN ROTHMAN, GREG SILVERSHEIN and LARRY and SHERYL WYMAN,** | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SOMERSET COUNTY |
| Plaintiffs, | Docket No.: SOM-L-2114-10 |
| vs. | Civil Action |
| **HAMILTON FARM GOLF CLUB, LLC and HF BUSINESS TRUST,** | **SUMMONS** |
| Defendants. | |

*THE STATE OF NEW JERSEY, TO DEFENDANT:*

> Hamilton Farm Golf Club, LLC
> c/o Michael Swanenburg, Esq.
> 11311 McCormick Road
> Suite 470
> Hunt Valley, Maryland 21031

YOU ARE HEREBY SUMMONED in a Civil Action in the Superior Court of New Jersey, instituted by the above named Plaintiffs, Kenneth M. Meiselman, Brian Rothman, Greg Silvershein and Larry and Sheryl Wyman, and are required to serve upon Brown Moskowitz & Kallen, P.C., the attorneys for the plaintiffs, whose name and office address appears above, an Answer to the annexed Complaint within thirty five (35) days after the service of the Summons and Complaint upon you, exclusive of the day of service. If you fail to answer, Judgment by default may be rendered against you for the relief demanded in the Complaint. You shall promptly file your Answer and proof of service thereof with the Clerk of Court, Superior Court of New Jersey, Somerset Vicinage, Law Division, Somerset County Justice Center, 20 North

Bridge Street, P.O. Box 3000, Somerville, NJ 08876-7000, in accordance with the Rules of Civil

Practice and Procedure.

    If you cannot afford to pay an attorney, call a Legal Services Office.  An individual not

eligible for free legal assistance may obtain a referral to an attorney by calling a county lawyer

referral service.  These numbers may be listed in the yellow pages of your phone book.  The

phone numbers for the county in which this action is pending are: Lawyer Referral Service, (908)

685-2323; Legal Services Office (908) 231-0840.


Dated:  January 4, 2011

                                       */s/ Christina P. Higgins*
                                       Christina P. Higgins
                                       Clerk of the Superior Court (Acting)

40 NORTH BRIDGE STREET
1ST FLR PO BOX 3000
SOMERVILLE        NJ 08876-1262

                              TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (908) 231-7054
COURT HOURS

               DATE:   DECEMBER 15, 2010
               RE:     MEISELMAN VS HAMILTON FARM
               DOCKET: SOM L -002114 10


    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 2.


    DISCOVERY IS   300 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.


    THE PRETRIAL JUDGE ASSIGNED IS:  HON MARGARET GOODZEIT


    IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT: (908) 231-7000 EXT 7706.


    IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
    PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
               ATTENTION:

                         ATT: BRUCE A. SCHOENBERG
                         BROWN MOSKOWITZ & KALLEN
                         75 MAIN STREET
                         SUITE 203
                         MILLBURN        NJ 07041

JUTSIN0

**Appendix XII-B1**

| | | **FOR USE BY CLERK'S OFFICE ONLY** |
|---|---|---|



## CIVIL CASE INFORMATION STATEMENT
### (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| **FOR USE BY CLERK'S OFFICE ONLY** |
|---|
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Kenneth L. Moskowitz | (973) 376-0909 | Somerset |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| Brown Moskowitz & Kallen, P.C. | Som-L 2114-10 |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 75 Main Street<br>Suite 203<br>Millburn, New Jersey 07041 | Complaint |
| | JURY DEMAND ■ YES ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| Kenneth M. Meilseman, Brian Rothman, Greg Silvershein and Larry and Sheryl Wyman, Plaintiffs | Kenneth M. Meilseman, Brian Rothman, Greg Silvershein and Larry and Sheryl Wyman v. Hamilton Farm Golf Club, LLC and HF Business Trust |

| CASE TYPE NUMBER (See reverse side for listing) | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ■ NO |
|---|---|
| 599 | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING?<br>☐ Yes ■ No | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES<br>(arising out of same transaction or occurrence)?<br>☐ Yes ■ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>■ UNKNOWN |
|---|---|

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>■ YES ☐ NO | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain)<br>☐ FAMILIAL ■ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? | ■ YES ☐ No |
|---|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

| | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes ■ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?<br>☐ Yes ■ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:

**Side 2**

# CIVIL CASE INFORMATION STATEMENT
## (CIS)
### Use for initial pleadings (not motions) under *Rule 4:5-1*

**CASE TYPES** (Choose one and enter number of case type in appropriate space on the reverse side.)

### Track I - 150 days' discovery
151 NAME CHANGE
175 FORFEITURE
302 TENANCY
399 REAL PROPERTY (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction)
502 BOOK ACCOUNT (debt collection matters only)
505 OTHER INSURANCE CLAIM (including declaratory judgment actions)
506 PIP COVERAGE
510 UM or UIM CLAIM (coverage issues only)
511 ACTION ON NEGOTIABLE INSTRUMENT
512 LEMON LAW
801 SUMMARY ACTION
802 OPEN PUBLIC RECORDS ACT (summary action)
999 OTHER (briefly describe nature of action)

### Track II - 300 days' discovery
305 CONSTRUCTION
509 EMPLOYMENT (other than CEPA or LAD)
599 CONTRACT/COMMERCIAL TRANSACTION
603N AUTO NEGLIGENCE – PERSONAL INJURY (non-verbal threshold)
603Y AUTO NEGLIGENCE – PERSONAL INJURY (verbal threshold)
605 PERSONAL INJURY
610 AUTO NEGLIGENCE – PROPERTY DAMAGE
621 UM or UIM CLAIM (includes bodily injury)
699 TORT – OTHER

### Track III - 450 days' discovery
005 CIVIL RIGHTS
301 CONDEMNATION
602 ASSAULT AND BATTERY
604 MEDICAL MALPRACTICE
606 PRODUCT LIABILITY
607 PROFESSIONAL MALPRACTICE
608 TOXIC TORT
609 DEFAMATION
616 WHISTLEBLOWER / CONSCIENTIOUS EMPLOYEE PROTECTION ACT (CEPA) CASES
617 INVERSE CONDEMNATION
618 LAW AGAINST DISCRIMINATION (LAD) CASES

### Track IV - Active Case Management by Individual Judge / 450 days' discovery
156 ENVIRONMENTAL/ENVIRONMENTAL COVERAGE LITIGATION
303 MT. LAUREL
508 COMPLEX COMMERCIAL
513 COMPLEX CONSTRUCTION
514 INSURANCE FRAUD
620 FALSE CLAIMS ACT
701 ACTIONS IN LIEU OF PREROGATIVE WRITS

### Centrally Managed Litigation (Track IV)

| | | | |
|---|---|---|---|
| 280 | ZELNORM | 290 | POMPTON LAKES ENVIRONMENTAL LITIGATION |
| 285 | STRYKER TRIDENT HIP IMPLANTS | 291 | PELVIC MESH (Johnson & Johnson) |
| 288 | PRUDENTIAL TORT LITIGATION | 292 | PELVIC MESH (Bard) |

### Mass Tort (Track IV)

| | | | |
|---|---|---|---|
| 248 | CIBA GEIGY | 281 | BRISTOL-MYERS SQUIBB ENVIRONMENTAL |
| 266 | HORMONE REPLACEMENT THERAPY (HRT) | 282 | FOSAMAX |
| 271 | ACCUTANE | 283 | DIGITEK |
| 274 | RISPERDAL/SEROQUEL/ZYPREXA | 284 | NUVARING |
| 275 | ORTHO EVRA | 286 | LEVAQUIN |
| 277 | MAHWAH TOXIC DUMP SITE | 287 | YAZ/YASMIN/OCELLA |
| 278 | ZOMETA/AREDIA | 601 | ASBESTOS |
| 279 | GADOLINIUM | | |

If you believe this case requires a track other than that provided above, please indicate the reason on Side 1,
in the space under "Case Characteristics.

**Please check off each applicable category**  ☐ **Putative Class Action**   ☐ **Title 59**

EXHIBIT 3

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

KENNETH M. MEISELMAN, BRIAN
ROTHMAN, GREG SILVERSHEIN, and
LARRY and SHERYL WYMAN,

        Plaintiffs,

          v.

HAMILTON FARM GOLF CLUB, LLC
and HF BUSINESS TRUST,

        Defendants.

Civil Action No. _____

## DECLARATION OF DAVID TOWNSEND

1.   I am over the age of 18 and competent to testify from personal knowledge as to the facts set forth in this Declaration.

2.   I serve as President of Hamilton Farm Golf Club, LLC ("HFGC"). HFGC owns and operates an exclusive, membership-only golf club in Gladstone, New Jersey. In addition, I am a beneficiary of HF Business Trust, which holds a security interest in HFGC's assets in connection with major financings of the Club's capital development and operations extending back to 2005.

3.   HFGC is a limited liability company formed in 2001 under the laws of the State of Delaware. HFGC's members are Dennis Townsend, David Townsend and Susan Townsend. Dennis Townsend, Susan Townsend and I are residents and citizens of the State of Maryland.

4.   HF Business Trust is a business trust formed under the laws of the State of Maryland, with its principal office located at 11311 McCormick Road, Suite 470, Hunt Valley, Maryland. Townsend Management, LLC is the sole trustee of HF Business

Trust.   Townsend Management, LLC is a Maryland limited liability company, and is owned by Dennis Townsend and me.   I am a beneficiary of HF Business Trust together with Dennis Townsend and Townsend Capital, LLC.   Townsend Capital, LLC is a Maryland limited liability company with its principal place of business in Maryland, and is owned by Dennis Townsend and me.

     5.   HFGC was served with the Complaint together with summonses for HFGC and HF Business Trust on January 7, 2011.

     I hereby declare under penalties of perjury that the foregoing information is true and correct.

Executed on February 1 , 2011

David Townsend

2

EXHIBIT 4

Christopher N. Tomlin, Esquire
BALLARD SPAHR LLP
210 Lake Drive East
Suite 200
Cherry Hill, NJ  08002
Telephone: 856.761.3400
Facsimile: 856.761.1020

*Attorneys for Defendants Hamilton Farm Golf Club, LLC and HF Business Trust*

| | |
|---|---|
| KENNETH M. MEISELMAN, BRIAN ROTHMAN, GREG SILVERSHEIN, and LARRY and SHERYL WYMAN, | : : : : SUPERIOR COURT OF NEW JERSEY : LAW DIVISION |
| Plaintiffs, | : SOMERSET COUNTY : |
| v. | : Docket No. SOM-L-2114-10 : |
| HAMILTON FARM GOLF CLUB LLC and HF BUSINESS TRUST, | : : : |
| Defendants. | : : |

## NOTICE OF FILING OF NOTICE OF REMOVAL

**TO:**   Clerk, Superior Court of New Jersey
Law Division, Somerset County
Somerset County Courthouse
20 N. Bridge St.
PO Box 3000
Somerville, NJ  08876-1262

Bruce A. Schoenberg, Esq.
Brown Moskowitz & Kallen, P.C.
75 Main Street, Suite 203
Millburn, New Jersey 07041

**PLEASE TAKE NOTICE** that Defendants Hamilton Farm Golf Club, LLC and HF

Business Trust (collectively, "Defendants"), by its undersigned counsel, filed a Notice of

Removal in the United States District Court for the District of New Jersey on the 4th day of

February, 2011.

**PLEASE TAKE FURTHER NOTICE** that a true and correct copy of the original removal documents, which were filed in the United States District Court for the District of New Jersey, are attached hereto (without exhibits) as Exhibit 1, and have served along with this notice on counsel for plaintiffs.

**PLEASE TAKE FURTHER NOTICE** that pursuant to 28 U.S.C. § 1446(d), no further proceedings shall occur in this Court unless and until this case is remanded.

Date: February 4, 2011

BALLARD SPAHR LLP

By: _____
      Christopher N. Tomlin (CT4441)

210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
T: 856-673-3840
F: 856-873-9082
tomlinc@ballardspahr.com

Of Counsel:

William J. Murphy
Daniel P. Moylan
MURPHY & SHAFFER LLC
Suite 1400, 36 South Charles Street
Baltimore, Maryland 21201
T: 410-783-7000
F: 410-783-8823
wmurphy@murphyshaffer.com
dmoylan@murphyshaffer.com

*Counsel for Defendants*