NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Kenneth M. Mieselman, et al.,

Plaintiffs,

v.

Hamilton Farm Golf Club, LLC, et. al.,

Defendants.

Civ. No. 11-653

OPINION

THOMPSON, U.S.D.J.

      This matter appears before the Court on the motion of Defendants Hamilton Farm Golf Club, LLC and others ("Defendants") for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 with respect to Count One. The Court has issued the Opinion below based upon the written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, the Court denies Defendants' motion.

DISCUSSION

      This case arises out of Defendants' refusal to refund deposits paid by Plaintiff Kenneth M. Mieselman and others ("Plaintiffs") as part of a golf membership program. Between May 2002 and December 2003, Plaintiffs each paid a deposit ranging from $200,000 to $275,000 in order to obtain an Individual Golf Membership ("IGM) or the upgraded Family Golf Membership ("FGM"). (Doc. No. 45).

      The membership plan contained a "Refund of Membership Deposit" provision that stated "[i]f the member resigns before the end of the 30-year period, membership deposit paid by the member or the amount of the membership then charged for membership, whichever is the less,

1

will be refunded, without interest, within 30 days after the issuance of the membership by the Club to a new member." (Doc. No. 45). Plaintiffs were also told that "the proceeds of every fourth membership sold by Defendant HFGC would be available to repay the membership deposits of resigned members, and that resigned members would have their membership deposits repaid in accordance with their priority on the waiting list." (Doc. No. 45).

However, Plaintiffs contend that prior to their retirement from membership, Defendants "created one or more new classes of membership in the Club . . . which were not provided for in the Membership Plan or contemplated in the FAQ distributed to induce them to join the Club." (Doc. No. 45). These memberships created Club "privileges identical to those provided for in the Plaintiffs'" IGMs and FGMs at a substantially lower cost. (Doc. No. 45). Plaintiff alleges that Defendants "knew or should have known that the offering of these New Golf Memberships would have the effect of rendering Plaintiffs' resigned [IGMs and FGMs] unsalable, as no perspective member would be interested in purchasing" the more expensive options when they could have "substantially identical New Golf Membership at a lower cost." (Doc. No. 45). Specifically, in Count I Plaintiffs allege that Defendants breached the covenant of good faith and fair dealing when they made these new memberships for the sole purpose of locking in current members. Defendants move for partial summary judgment with respect to the Count I.

    1. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court must construe all facts and inferences in the light most favorable to the nonmoving party. *Boyle v. City of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The nonmoving party must come forward with specific facts showing a genuine issue for

trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "A factual dispute is 'genuine' and . . . warrants trial 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (citations omitted).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). If a civil defendant moves for summary judgment on the basis that plaintiff has failed to establish a material fact, the judge must inquire not as to "whether [s]he thinks the evidence unmistakably favors one side or the other but[,] whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252. A mere "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

2. Analysis

Here, the Court finds that sufficient admissible evidence exists to raise an issue of material fact with respect to the covenant of good faith and fair dealing. The Court will examine the applicable standard for good faith and fair dealing claims before turning to the remaining issues of material fact.

Under New Jersey law, "[e]very party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." *Elliot & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 328 (3d Cir. 2006). A party "breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J.

2001). "Such risks clearly would be beyond the expectations of the parties at the formation of a contract when parties reasonably intend their business relationships to be mutually beneficial." *Id*. "Bad motive or intention is essential" to a court's consideration of this claim. *Id*.

Evidence of bad motive can be shown through circumstantial evidence. "[I]t has been recognized that one's state of mind is seldom capable of direct proof and ordinarily must be inferred from the circumstances properly presented and capable of being considered by the court." *Wilson*, 773 A.2d at 1132 (*Amerada Hess Corp. v. Quinn*, 143 N.J. Super. 237, 249 (Law Div. 1976)). A party's intentions "need not be proved from what he said, but they may be inferred from all that he did and said, and from the surrounding circumstances of the situation under investigation." *Id.* (citing *Mayflower Indus. V. Thor Corp.*, 15 N.J. Super. 139, 162 (Ch. Div. 1951)). Therefore, where "motive and interest are relevant to a claim, summary judgment should be granted with great caution." *Marietta v. Cities Service Oil Co.*, 414 F. Supp. 1029, 1038 fn. 6 (D.N.J. 1976) (citations omitted); *see also F.D.I.C. v. National Union Fire Ins. Co. of Pittsburgh, P.A.,* 146 F. Supp. 2d 541, 549 (D.N.J. 2001) ("[w]hen a question of intent is material to a cause of action, as it is here, resolution on a summary judgment basis is generally improper.").

Here, the Court finds that a dispute of material fact exists such that a reasonable jury could find that Defendants acted in bad faith. Defendant was contractually authorized to add new membership categories; however, as the Court observed in its previous Opinion on the matter, "for the Club to create a new membership category nearly identical to IGMs and FGMs in all respects except price is unsettling, particularly in light of the various inducements in the Plan suggesting that resigned membership will be reissued as new members joined." (Doc. No. 28); *see also Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1443 (7th Cir. 1992) (a

4

controlling party must exercise discretion reasonably and with proper motive). Though Defendants put forward a set of reasons that, if accepted by the jury, could defeat Plaintiffs' claim, a jury viewing the facts in the light most favorable to Plaintiff could find for Plaintiff.

The Court examines two issues upon which a jury's determination is essential: (1) the materiality of the contract differences and (2) the Parties' reasonable expectations under the agreement.

First, the Court finds that there remains an issue of material fact with respect to the similarity of the Local Memberships and the Limited Memberships. *See EP Medosystem, Inc. v. Ecocath*, 235 F.3d 865, 875 (3d Cir. 2000) ("materiality is a mixed question of law and fact, and the delicate assessments of the inferences a reasonable [person] would draw from a given set of facts are peculiarly for the trier of fact."). Defendants have shown that the memberships are not only different prices, but also that they have different terms, including different statuses upon reaching maturity, rights upon first sale, membership capacities, and effective terms. However, as Plaintiff points out, the privileges of membership are the same in terms of club use and enjoyment.

The mere fact that the memberships have some differences is insufficient on its own. To hold otherwise would mean that a party can avoid the implied covenant by making new memberships that have only minor or technical differences. For instance, if Defendants were to create new memberships that required a 31-year period before maturity instead of a 30-year period that membership would be different and less desirable; however, it is unlikely that such a difference would be material. Having viewed the benefits and privileges available under each contract, the court finds that a reasonable jury could find these differences immaterial. Both sides have submitted reasonable arguments supported by admissible evidence concerning

5

materiality. Since the evaluation and weighing of evidence is the jury's function and Plaintiff has shown adequate and admissible evidence contesting the materiality of the differences, the Court finds an issue of material fact.

In addition to the materiality of contract differences, there remains a question of material fact with respect to the Parties' expectations under the agreement. Defendants submitted evidence that during the economic downturn high-end golf clubs were struggling financially and needed to increase revenue. The decision to implement the action at issue was allegedly the product of careful deliberation. Plaintiffs counter that many other routes were available to increase revenue.

While the implied covenant does not require Defendant to take the *best* route possible, the party with discretion can still breach the implied covenant if it "uses its discretion for a reason outside the contemplated range – a reason beyond the risks assumed by the party claiming the breach." *Wilson*, 168 N.J. at 236. Plaintiffs admit that, based on the contract's language, they assumed the risk that, if prices of memberships decline over time, they might receive less than a full refund when they resigned. (Doc. No. 79, 26) (Members resigning before the end of the 30-year period will receive "whichever is less" of the membership deposit paid by that member or the amount charged for membership at the time of retirement). However, Plaintiffs contend that they did not assume the risk that Defendants would create a new class of memberships with identical rights and privileges. Plaintiffs support this contention by showing that Defendants enticed them to purchase their Membership by touting the refundability of membership deposits. In light of the Defendants' enticements, the fact that these new memberships could effectively freeze the other memberships appears to be a substantial alteration and one not clearly within the Parties' contemplation at the time of contract formation.

However, it is possible that a jury could find that the parties agreed that the economic climate was a risk contemplated in the contract. Viewing the facts in the light most favorable to the nonmoving party, a reasonable jury could find that the freezing of memberships falls outside the scope of the risk contemplated by the parties.

CONCLUSION

For the foregoing reasons, the Motion for Partial Summary Judgment is denied.

*/s/ Anne E. Thompson*

ANNE E. THOMPSON, U.S.D.J.

Dated: 10/23/2013