NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Kenneth M. Meiselman, et al.,

Plaintiffs,

v.

Hamilton Farm Golf Club, LLC, et. al.,

Defendants.

Civ. No. 11-653

OPINION

THOMPSON, U.S.D.J.

This matter comes before the Court upon the motion of Defendants Hamilton Farm Golf Club, LLC and others ("Defendants") for partial summary judgment. (Doc. No. 94). Defendants seek to dismiss the claims raised by Daniel Carroll, Joseph Cuttone, and Robert Milanese and also seek to limit the amount of damages available to Plaintiffs. (Docs. No. 94 and 107). The Court has issued the Opinion below based upon the written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, the Court will grant Defendants' motion for partial summary judgment in part and deny the motion in part.

BACKGROUND

The present motion raises two issues: (1) whether three of the plaintiffs in this case have standing; and (2) the calculation of the maximum amount of damages available to Plaintiffs.

This case arises out of Defendants' refusal to refund deposits paid by Plaintiff Kenneth M. Meiselman and others ("Plaintiffs") as part of a golf membership program. Plaintiffs each paid a certain deposit in order to obtain an Individual Golf Membership ("IGM") or the upgraded Family Golf Membership ("FGM") from Defendants. (Doc. No. 45). The membership plan

1

contained a "Refund of Membership Deposit" provision that stated "[i]f the member resigns before the end of the 30-year period, the membership deposit paid by the member or the amount of the membership then charged for membership, whichever is less, will be refunded, without interest, within 30 days after the issuance of the membership by the Club to a new member." (Doc. No. 45). Plaintiffs were also told that "the proceeds of every fourth membership sold by Defendant[s] would be available to repay the membership deposits of resigned members, and that resigned members would have their membership deposits repaid in accordance with their priority on the waiting list." (Doc. No. 45).

Plaintiffs contend that Defendants have now "created one or more new classes of membership in the Club . . . which were not provided for in the Membership Plan." (Doc. No. 45). These new memberships allegedly created Club privileges that are "identical to those provided for in the Plaintiffs'" IGMs and FGMs at a substantially lower cost. (*Id*.). These cheaper plans have had the effect of "freezing" Plaintiffs in their respective spots on the resignation refund list, preventing each plaintiff from moving up the list to receive his or her refund.

In Defendants' motion for partial summary judgment, Defendants claim that the three plaintiffs who resigned most recently and have the lowest spots on the resignation list – Daniel Carroll, Joseph Cuttone, and Robert Milanese – do not have standing because they have not suffered an injury in fact. Defendants argue that, even if Plaintiffs are entitled to move up the resignation list, not enough new members have joined the Club for these three plaintiffs to move far enough up the list to become entitled to a refund. Plaintiffs admit that at least 34 more memberships must be sold before either Carroll, Cuttone, or Milanese become entitled to receive a refund. (Doc. No. 100 at 26).

2

Defendants also move to limit the maximum amount of damages available in this case. Defendants argue that each plaintiff cannot recover the entire value of his or her deposit because the new deposits are now paid in installments. Defendants contend that each plaintiff is only contractually entitled to receive the value of the first payment on the installment program, not the entire value of the membership deposit. Using this calculation for damages, Defendants argue that the maximum amount recoverable in this action should be limited to $275,000. (Doc. No. 107).

## DISCUSSION

1. *Legal Standard for Summary Judgment*

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law [. . .]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir. 1983). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine

issue for trial.'" *Anderson,* 477 U.S. at 250 (quoting Fed.R.Civ.P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record;" mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatte v. N.J. State Police,* 71 F.3d 480, 484 (3d Cir. 1995); *Jackson v. Danberg,* 594 F.3d 210, 227 (3d Cir. 2010) ("[S]peculation and conjecture may not defeat summary judgment.")(citations omitted).

*2. Analysis*

Defendants' motion raises two issues: (1) whether the claims of Daniel Carroll, Joseph Cuttone, and Robert Milanese should be dismissed for lack of standing; and (2) whether each plaintiff is only contractually entitled to recover an amount equal to the value of the first installment payment. The Court will deal with each issue in turn.

a.  <u>Standing of Carroll, Cuttone, and Milanese</u>

Defendants claim that Carroll, Cuttone, and Milanese lack standing because they have not yet suffered an injury in fact.

To establish standing, "a plaintiff must show that he suffered an 'injury in fact.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The party invoking federal jurisdiction bears the burden of establishing th[is] element[]." *Id*. at 561. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Id*. at 560. "Allegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). "A threatened injury must be 'certainly impending' to constitute injury in fact." *Id*. *See also Lujan*, 504 U.S. at 564 (harm must be "certainly impending").

Here, Plaintiffs admit that, even under Plaintiffs' theory of liability, not enough new members have joined the Club for Plaintiffs Carroll, Cuttone, or Milanese to move far enough up

4

the list to receive a refund. Doc. No. 103, Plaintiffs' Response to Defendants' Statement of Material Facts at para. 17. Currently, neither Carroll, Cuttone, nor Milanese will become entitled to relief, under any theory of liability, unless and until Defendants sell at least 34 additional new memberships. (Doc. No. 100 at 26). Plaintiffs do not show that Defendants are certain to sell this number of memberships. For the reasons set forth above, Plaintiffs fail to show that Carroll, Cuttone, or Milanese have suffered an actual harm or that the possible harm is certain to occur. *See Lujan*, 504 U.S. at 564 n. 2 (allegations of a future harm at some indefinite time cannot be an "actual or imminent injury"). Therefore, the claims of Carroll, Cuttone, and Milanese are dismissed without prejudice.

    b. <u>Limiting Refund Value to the Amount Paid in First Installment</u>

Defendants claim that Plaintiffs are only contractually entitled to recover the price of the initial installment payment on the deposit, not the entire value of the membership deposit. Based on this premise, Defendants have moved for a finding that the maximum value of available damages in this case is $275,000.

The Membership Plan states the following: "[i]f [a] member resigns before the end of the 30-year period, the membership deposit paid by the member or the amount of the membership deposit then charged by the Club for the membership, whichever is less, will be refunded, without interest, within 30 days after the issuance of the membership by the Club to a new member." *See* Schoenberg Decl. Ex. 4, June 2002 Membership Plan at HF0000457.

Here, Defendants have not shown that members who have paid the full amount of the security deposit, such as Plaintiffs, are only entitled to the initial payment. The text of the Membership Plan explicitly refers to a refund equal to "*the amount* of the membership deposit" and makes no mention of an initial or partial payment. *See* Schoenberg Decl. Ex. 4, June 2002

Membership Plan at HF0000457 (emphasis added).  Furthermore, the event that triggers the refund is not receipt of a partial payment, but rather the "issuance" of a new membership for which Defendants "charge" a greater "amount" than just the initial payment.  For the reasons set forth above, Defendants' motion for partial summary judgment with respect to this issue will be denied.

## CONCLUSION

For the reasons set forth above, the motion for partial summary judgment will be granted in part and denied in part.

*/s/ Anne E. Thompson*  
ANNE E. THOMPSON, U.S.D.J.